## GIBSON v. TEXAS CO. et al.   (No. 2351.)

Court of Civil Appeals of Texas. El Paso. Sept. 26, 1929.

Rehearing Denied Oct. 17, 1929.

Williams & Jackson, of Fort Stockton, for appellant.

Seay, Seay, Malone & Lipscomb, of Dallas, and Hart Johnson and T. M. Milam, both of Fort Stockton, for appellees.

PELPHREY, C. J. Appellant, Fred Gibson, brought this suit against the Texas Company and J. A. Frederick for damages to his automobile alleged to have been occasioned by the negligence of the agent of appellees. He alleged the damage arose from a collision between a truck operated by said agent and the automobile of appellant operated by his daughter.

He alleged several grounds of negligence, among which was that the agent drove the truck on the left-hand side of a street in the town of Fort Stockton instead of the right-hand side, and thereby caused the collision; and that when the agent neared appellant's automobile he turned the truck shortly and sharply to the left, and thereby ran the same directly into appellant's automobile, when if he had turned to the right, or if he kept going straight, no collision would have occurred.

Appellee Frederick answered by general demurrer, certain special exceptions, a general denial, specially denied that the truck was either owned or operated by the Texas Company, or by its agent; and specially alleged that the truck at the time of the alleged accident was traveling in a southwesterly direction, and that appellant's car was traveling in an easterly direction at a rapid rate of speed, and that appellant's daughter, when she approached the intersection of the streets where the accident is alleged to have occurred, saw, or by the use of ordinary care and diligence could have seen, the truck and could have avoided the collision.

The Texas Company adopted the answer of appellee Frederick; specially denied that it was having the truck driven and operated on the streets of Fort Stockton on the date alleged, that the driver of the truck was its agent, that appellee Frederick was its agent, or that it owned or was having operated the truck in question; and asked for judgment over against Frederick.

The case was tried to a jury, and at the conclusion of the testimony the court instructed a verdict for both appellees, and Gibson has appealed.

Appellant in his brief presents eight assignments of error, all attacking the court's action in instructing a verdict.

The evidence is brief, and we will here quote those portions bearing upon the question before us.

Miss Mary Naomi Gibson, who was driving appellant's car, testified: "At the time the accident occurred, I was in Fort Stockton, Pecos County, Texas, near the Burton-Lingo Lumber yard, which building faces east. The accident occurred in front of this building about one hour before sunset. I had just turned northeast. I first saw the truck only a few seconds before it hit my car; I was on the right side of the street, and the truck was about the middle of the street when I first saw it. After I saw the truck, it changed

its course before it struck my car. It seemed that he attempted to drive his truck in front of my car. It was just a second before it ran into the car that I was in that he turned his course—the time was so short I could barely notice him turn his truck. I was driving about 15 or 20 miles per hour. The truck was traveling much faster than my car. The truck struck my car on the left front wheel. When struck by the truck, the impact of the collision crushed the front wheel of my car and the impact was so great that my car completely turned around and was facing south when stopped. My car was headed almost south when it stopped after the truck ran into it. * * * I had just turned off the street that runs north and 'south, or in other words had crossed this street when the truck struck my car. * * * I do not recall exactly how far the truck was from me when I first saw it, but I think it was about 25 feet. * * * I did attempt to turn my car to avoid the accident, and I turned it farther toward the right. I did this immediately prior to the accident. * * * Immediately prior to the accident I was driving east and had to make a small curve in crossing the street to get across and when across the street I was traveling in a northeast direction."

Appellant, Fred Gibson, testified: "I saw at the place where the accident happened the wrecked car which was mine. I could see the way my car had been turned around. There was a number of tracks and it had been hit right on the front wheel; the back end had not moved, only it had skidded some. The front end had been thrown around and the back end remained practically where it was. * * * The front of the car was over in the grass off of the east side of the street. The back end was on the right hand side of the street and in the end of the street or road running northeast, with reference to the street running north and south. It was over in the street running northeast a few feet."

From the allegation in appellee's answers that the driver of the truck was driving the truck in a southwesterly direction and the testimony of Miss Gibson that she was driving in a northeasterly direction, we gather that the car and truck were going in opposite directions. We further gather from Miss Gibson's testimony that immediately after crossing a street running north and south, and while driving on a street which ran in a northeasterly direction, she saw the truck about 25 feet ahead of her; that she was on the right-hand side of the road and the truck about the middle; that the truck changed its course, and that she turned her car to the right, but that the truck came on and struck her car on the left front wheel.

As we view the record, it raises issues as to the negligence of the driver of the truck both in driving on the left-hand side of the street and in suddenly changing the course of the truck to the left, which should have been submitted to the jury for its determination.

The assignments raising this question must be sustained, and the judgment of the trial court reversed and the cause remanded.

■ We cannot agree with appellant's contention that the evidence is sufficient to raise an issue as to the truck going at a rate of speed greater than 20 miles per hour. Miss Gibson testified that she was driving about 15 or 20 miles per hour and that the truck was going much faster. If she was driving 15 miles per hour, how can it be said that by her expression "much faster" she meant more than 5 miles per hour.

Appellee the Texas. Company contends that as to it the instructed verdict was correct, in that there is no proof to show that the driver of the truck was an agent, representative, or employee of it.

With this we do not agree. Frederick, under the evidence, was the employee of the Texas company, as was likewise the driver of the truck. Woodward-Wanger Co. v. Nelson (Tex. Civ. App.) 11 S.W.(2d) 371, and authorities there cited.

Reversed and remanded.

### On Motion for Rehearing.

Appellee the Texas Company asserts in its motion for a rehearing that we erred in overruling its first counter proposition, which reads:

"The uncontroverted evidence shows that at the time of the accident J. A. Frederick was commission agent of The Texas Company. His appointment as such agent was in writing and, among other things, contains the following:

" 'You (J. A. Frederick) will accept full responsibility for and indemnify the Company against all acts and omissions of your agents, employees and servants.'

"J. A. Frederick employed one Mack Dean to drive the truck. The Texas Company had nothing to do with Dean's employment. It did not even suggest or recommend Mr. Dean to Mr. Frederick. Frederick paid Dean's wages. The truck belonged to Frederick personally and Frederick employed, directed and controlled the movements of Dean. Frederick alone had the authority, right and power to discharge or hire Dean. At the time of the accident the truck was being driven by Dean and Frederick was not in the truck or near the scene of accident. Under such circumstances, as a matter of law, Dean was not the agent or employee of the Texas Company, and it could not be held for his acts, whether negligent or otherwise. Under such circumstances, the court was required, as a matter of law, to direct a verdict for the Texas Company."

■■ We understand the well-established rule to be that the master is liable for the acts of one whom his servant employs under authority given him by the master to assist in

the performance of the master's work, and that such authority to employ assistants may be either express or implied. 39 C. J. p. 1271, and authorities cited.

We are of the opinion that if the contract between Frederick and appellant fails to give express authorization, it, the nature of the work to be performed, and the circumstances of this case, are sufficient to show an implied one.

The Woodward-Wanger Co. v. Nelson Case being authority for the holding that Frederick was the servant of appellant, and he having the implied authority to employ Mack Dean to assist him in the performance of appellant's work, appellant would become liable for Dean's acts.

The motion for rehearing is overruled.